Local Social, Inc. v. Stallings, 2019 NCBC 8.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1889

LOCAL SOCIAL, INC. and LYNELL
I. EADDY,

          Plaintiffs,

v.

SEAN STALLINGS,

          Defendant.

**ORDER AND OPINION ON
PLAINTIFF LOCAL SOCIAL, INC.'S
MOTION TO DISMISS DEFENDANT'S
MOTION TO ENFORCE MEDIATED
SETTLEMENT AGREEMENT
UNDER RULE 12(b)(1)**

1.    **THIS MATTER** is before the Court on Plaintiff Local Social, Inc.'s ("Local Social") Motion to Dismiss Defendant's Motion to Enforce Mediated Settlement Agreement Under Rule 12(b)(1) (the "Motion"). (ECF No. 54 ["Mot."].) For the reasons set forth below, the Court **GRANTS** the Motion.

*Ward and Smith, P.A., by Gary J. Rickner and Marla S. Bowman, for Plaintiff Local Social, Inc.*

*Adams, Howell, Sizemore & Lenfestey, P.A., by Ryan J. Adams, for Defendant.*

Robinson, Judge.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

2.    The procedural and factual background of this matter is set out more fully in *Local Social, Inc. v. Stallings*, 2018 NCBC LEXIS 43 (N.C. Super. Ct. May 9, 2018) and *Local Social, Inc. v. Stallings*, 2017 NCBC LEXIS 94 (N.C. Super. Ct. Oct. 9, 2017). The Court recites here only those facts relevant and necessary for its determination of the Motion.

3.     This litigation arises out of several disputes between Plaintiff Lynell I. Eaddy ("Eaddy" and, together with Local Social, "Plaintiffs") and Defendant Sean Stallings ("Stallings"). In 2014, Eaddy sold half her interest in Local Social to Stallings. At some point after Stallings became a shareholder, the relationship between Eaddy and Stallings deteriorated. Plaintiffs allege that Stallings engaged in an array of misconduct—including using Local Social's credit card for personal expenses totaling approximately $146,736 (the "Disputed Expenses")—which led Plaintiffs to remove Stallings as president, terminate his employment, and initiate this litigation on February 16, 2017 seeking monetary and equitable relief on claims for breach of fiduciary duty and constructive fraud, conversion and misappropriation, constructive trust, accounting, computer trespass, unfair and deceptive trade practices, punitive damages, enforcement of a promissory note, judicial enforcement of a security interest, and two claims for breach of contract. (Verified Compl. 12−17, 19−21, ECF No. 1.) In response, Stallings asserted counterclaims for violation of the North Carolina Wage and Hour Act, conversion, and three claims for breach of contract. (Answer & Countercls. 16–19, ECF No. 8.)

4.     This action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated February 16, 2017, (ECF No. 3), and assigned to the undersigned by order of the Chief Business Court Judge dated February 17, 2017, (ECF No. 4).

5.     The parties participated in a mediated settlement conference on December 18, 2017, at which they executed a Memorandum of Settlement (the "Memorandum")

reflecting their agreement to resolve this litigation. (Second Aff. Sean Stallings Ex. A, ¶ 6, ECF No. 41 ["Stallings Aff."].)

6. The Memorandum provides that Plaintiffs shall pay Stallings: "(i) $90,000.00 cash within 60 days of this [Memorandum] plus (ii) $27,500.00 each year on the anniversary of this [Memorandum] each year [sic] for 4 years (no interest)[,]" (Stallings Aff. Ex. A, ¶¶ 2–3(a)), with the $27,500 payments to be secured by a confession of judgment in the total amount of $110,000 in favor of Stallings against Plaintiffs, (Stallings Aff. Ex. A, ¶ 3(b)). The fully executed confession of judgment is to be delivered to, and held by, Stallings's attorney pending Plaintiffs' compliance with their obligation to pay $27,500 each year for four years. (Stallings Aff. Ex. A, ¶ 3(b)(i).)

7. Paragraph 3(d) of the Memorandum obligates the parties to file a mutual stipulation of dismissal with prejudice of all claims in this action. (Stallings Aff. Ex. A, ¶ 3(d).) Pursuant to paragraph 3(e), the confession of judgment, settlement agreement, and stipulation of dismissal "shall be delivered to the respective parties when the $90,000.00 payment is timely made[.]" (Stallings Aff. Ex. A, ¶ 3(e).) Pursuant to paragraph 3(c) of the Memorandum, the parties executed a Settlement Agreement and Mutual Release (the "Settlement Agreement"), in which Plaintiffs and Stallings, among other things, agreed to release all claims between them. (Stallings Aff. ¶ 13, Ex. A, ¶ 3(c); Br. Opp'n to Def.'s Mot. to Enforce Settlement Agr. Ex. 1, ¶ 14, ECF No. 43.1 ["Eaddy Aff."]; *see* Stallings Aff. Ex. B ["Settlement Agreement"].)

8.      The source of the parties' current dispute lies in paragraph 3(f) of the Memorandum, which states that Plaintiffs

> agree[] to work in good faith with Local Social, Inc.'s accounting firm to recharacterize [sic] the item marked "loan to [Stallings]" on the 2016 Local Social, Inc. balance sheet: (i) as an uncollectible debt on the 2017 taxes, (ii) as business expenses for the year 2016, requiring an amendment of the 2016 tax returns of Local Social, Inc., or (iii) some combination of the above, in increments recommended by Local Social, Inc.'s accountant.

(Stallings Aff. Ex. A, ¶ 3(f); *see also* Settlement Agreement ¶ 17 (incorporating paragraph 3(f) of the Memorandum).)

9.      Initially, Local Social's accountants recommended that all but $18,212.54 of the Disputed Expenses should be re-characterized as business expenses for the year 2016 and that Local Social's 2016 tax return should be amended to reflect the same.  (Stallings Aff. ¶ 9.)  Stallings, however, did not agree with this proposal as he believes that all of the Disputed Expenses are deductible business expenses.  (Stallings Aff. ¶ 9.)  Thereafter, on February 11, 2018, Local Social's counsel e-mailed Stallings's counsel with an alternative plan according to which Local Social would deduct approximately $43,671.03 of the Disputed Expenses on its 2017 tax return.  (Stallings Aff. ¶ 10.)  Again, Stallings did not agree with the proposal.  (Stallings Aff. ¶ 10.)

10.      Eventually, Local Social's counsel contacted Lori Aveni ("Aveni"), a certified public accountant who provides bookkeeping services for Local Social, for her professional opinion on reclassifying the Disputed Expenses.  (Br. Opp'n to Def.'s Mot. to Enforce Settlement Agr. Ex. 2, ¶ 6, ECF No. 43.2 ["Aveni Aff."]; Eaddy Aff. ¶ 12.)

Aveni advised counsel and the parties that the Disputed Expenses should not be reclassified as an uncollectible debt on Local Social's 2017 tax return due to IRS regulations requiring that a debt be "bona fide" in order to qualify for bad-debt deduction. (*See* Aveni Aff. ¶ 7(d).) Aveni further advised the Disputed Expenses could not be reclassified as business expenses for the year 2016 because, absent actual receipts documenting the expenses, Local Social's 2016 tax return would face the risk of an IRS audit. (*See* Aveni Aff. ¶ 7(a)–(b); Eaddy Aff. ¶¶ 13–14.)

11. Stallings filed the Motion to Enforce Mediated Settlement Agreement (the "Motion to Enforce") on February 28, 2018. (ECF No. 40 ["Mot. to Enforce"].) The Court held a hearing on the Motion to Enforce on April 26, 2018 and issued an Order and Opinion denying the Motion to Enforce on May 9, 2018. *Local Social*, 2018 NCBC LEXIS 43, at *14.

12. The Court noted in its May 9, 2018 Order and Opinion that the parties agree that the Memorandum is a valid and enforceable contract, but disagree as to the interpretation of Paragraph 3(f). *Id.* at *11. Stallings argued that paragraph 3(f) requires Local Social "to reclassify the Disputed Expenses in one of three ways: (1) as an uncollectible debt on Local Social's 2017 tax return, (2) as deductible business expenses for the year 2016, which would require an amendment to Local Social's 2016 tax return, or (3) some combination of (1) and (2)." *Id.* Plaintiffs contended that paragraph 3(f) only required them to work in good faith with Local Social's accounting firm to reclassify the Disputed Expenses and that they had fulfilled this obligation by

seeking the advice of their accountant, "even though they have not reclassified the expenses based on their accountant's advice[.]" *Id.* at 11–12.

13.     The Court concluded that paragraph 3(f) "is susceptible to more than one reasonable interpretation and, therefore, is ambiguous." *Id.* at 12–13.    Specifically, the Court held that:

> Paragraph 3(f) can reasonably be interpreted as merely requiring that Plaintiffs make a good faith effort to re-characterize the Disputed Expenses as an uncollectible debt, deductible business expenses, or a combination of the two, whether they succeed in re-characterizing the Disputed Expenses or not.    Paragraph 3(f) can also reasonably be interpreted, however, as requiring Plaintiffs to actually re-characterize the Disputed Expenses and work in good faith with Local Social's accounting firm only with regard to the method by which the expenses are re-characterized—that is, as an uncollectible debt, business expenses, or a combination of the two.    If the latter interpretation of paragraph 3(f) applies, Plaintiffs have failed to comply with the agreement as it is undisputed that Plaintiffs have not re-characterized the Disputed Expenses.    Conversely, if the former definition of paragraph 3(f) applies, there is a dispute of fact as to whether Plaintiffs have complied with the agreement.

*Id.* at 13.

14.     Accordingly, the Court denied the Motion to Enforce, stating that the "issue of interpretation and effect of paragraph 3(f) of the Memorandum shall proceed to trial." *Id.* at 14.

15.     The Court scheduled this action for trial beginning July 16, 2018.    (Pretrial Scheduling Order ¶ 2, ECF No. 49.)

16.     In the parties' proposed Pretrial Order, filed on June 22, 2018, Stallings contended that the chief issue for trial was:

> Does paragraph 3(f) of the Memorandum . . . require Local Social to reclassify the Disputed Expenses in one of three ways: (1) [as] an

uncollectible debt on the 2017 Local Social tax return, (2) as business expenses for the year 2016, requiring an amendment of Local Social's 2016 tax returns, or (3) some combination of (1) and (2) in increments recommended by Local Social's accountant?

(Proposed Pretrial Order 6, ECF No. 50.)

17. During the course of pretrial preparations, Local Social and Stallings sought additional advice from accountants on how Local Social could reclassify the Disputed Expenses in accordance with paragraph 3(f) of the Memorandum. (*See* Mot. ¶ 4; Def.'s Br. Resp. to Local Social's Mot. to Dimiss Ex. D, at 1, ECF No. 63.4 ["June 28 E-mail"].) On June 28, 2018, Stallings's counsel informed Local Social's counsel that Stallings had identified two certified public accounts willing to discuss working with Local Social to amend its tax returns. (*See* June 28 E-mail 1.)

18. Rather than work with the accountants suggested by Stallings's counsel, Local Social contacted S. Scott Hensley ("Hensley"), a certified public accountant with Stancil PC, who advised Local Social on July 3, 2018 that it was his "professional opinion that the appropriate action is to re-characterize the entirety of the [Disputed Expenses] amount as uncollectible debt" on Local Social's 2017 tax return. (Mot. Ex. A, at 1, ECF No. 54.1 ["July 3 Letter"].) Hensley further advised that this course of action would require an amendment of Local Social's 2017 tax return and would "result in corresponding income to [] Stallings," to whom Local Social would issue a 1099C form. (July 3 Letter 1.)

19. On July 5, 2018, Local Social filed the Motion, along with a brief in support. (Pl. Local Social, Inc.'s Br. Supp. Mot. to Dismiss Def's Mot. to Enforce Mediated Settlement Agr. Under Rule 12(b)(1), ECF No. 56 ["Br. Supp."].)

20.     Following the pretrial hearing held on July 9, 2018, the Court continued the trial of this action to a later, unspecified date.  (Order Continuing Trial ¶¶ 1, 3, ECF No. 61.)

21.     The following day, Local Social engaged Hensley "to amend its tax returns in compliance with [p]aragraph 3(f), and provided him with all documentation necessary to amend Local Social's returns.  (Notice Supp. Mot. to Dismiss ¶ 4(a), ECF No. 62 ["Notice Supp."].)  Hensley committed to filing Local Social's amended tax returns by August 15, 2018.  (Notice Supp. ¶ 4(b).)

22.     Stallings filed his brief in opposition to the Motion on July 30, 2018, contending that the parties had previously agreed that the Disputed Expenses "could not be deducted from [Local Social's] 2017 tax returns as [an] uncollectible debt due to the applicable IRS regulations" and that, regardless, amending Local Social's tax returns for 2017 does not comply with paragraph 3(f) of the Memorandum.  (Def.'s Br. Resp. to Local Social's Mot. to Dismiss 4, 7–8, ECF No. 63 ["Br. Resp."].)

23.     Local Social filed its reply brief on August 13, 2018.  (Pl.'s Reply Supp. of Mot. to Dismiss Def.'s Mot. to Enforce Mediated Settlement Agr. Under R. 12(b)(1) 4, ECF No. 64 ["Reply"].)  Local Social attached to its reply brief an unverified letter from Hensley dated August 13, 2018, stating that Hensley had completed Local Social, Inc.'s amended tax returns to reclassify the Disputed Expenses partially as business expenses for 2016 and partially as an uncollectible debt for 2017.[1]  (Reply

---

[1] There appears to be a discrepancy in amount concerning Disputed Expenses between Hensley's August 13 letter and other documents.  Local Social's 1120S Overflow Statement for its original 2016 tax return labels the Disputed Expenses as the "sean [sic] loan" and lists the amount at $146,736.  (Def.'s Suppl. Br. Resp. to Pl.'s Mot. to Dismiss Pursuant to R.

Ex. A, at 1, ECF No. 64.1 ["August 13 Letter"].) Hensley first reduced the Disputed Expenses by $19,016 as business expenses for which there were verifiable receipts. (August 13 Letter 1.) After accounting for meals and expenses, Hensley amended Local Social's 2016 tax return "to account for $14,510 in deductible business expenses." (August 13 Letter 1.) Hensley also discovered an error in Local Social's prior return and reduced the Disputed Expenses by an additional $63,273, leaving a remainder of $51,043 in Disputed Expenses. (August 13 Letter 1.) Finally, Hensley amended Local Social's 2017 tax return to write off the remaining $51,043 as an uncollectible debt. (August 13 Letter 1.) The written-off $51,043 of uncollectible debt is listed on Schedule K to the 2017 tax return as a nondeductible capital loss. (Suppl. Br. Resp. Ex. C, ECF No. 69.3.)

24. The Court held a telephone conference with counsel for the parties on August 29, 2018 to discuss these developments, after which counsel for Local Social provided Stallings's counsel with copies of the amended 2016 and 2017 tax returns, along with Stallings's amended K-1 forms. (Scheduling Order ¶¶ 1, 10, ECF No. 66.) Following the telephone conference, the Court directed Local Social to file an affidavit of Hensley verifying that Local Social's amended tax returns for 2016 and 2017 had been filed with the relevant state and federal authorities, and directed the parties to

---

12(b)(1) Ex. A, ECF No. 69.1.) Additionally, Local Social's balance sheet as of August 15, 2017 lists the "Loan to Sean" as $146,736.25. (Suppl. Br. Resp. Ex. B, ECF No. 69.2.) However, Hensley's August 13 letter states that Local Social's "2016 tax return originally referenced a 'loan to Shareholder' totaling $146,736 and is comprised of a $133,332 loan to Sean Stallings and a $13,404 loan to Lynell Eaddy." (August 13 Letter 1.) Although Stallings points out the discrepancy, it does not appear that he relies on the discrepancy in opposing the Motion. (*See* Def.'s Suppl. Br. Resp. to Pl.'s Mot. to Dismiss Pursuant to R. 12(b)(1) 2 n.2, ECF No. 69 ["Suppl. Br. Resp."].)

(1) meet and confer, following Stallings and his counsel's review of the relevant documents, in an attempt to resolve their dispute, and (2) file supplemental briefs in support of and in opposition to the Motion if they could not resolve their dispute. (Scheduling Order ¶ 12(a)–(d).)

25. On September 5, 2018, Local Social filed the affidavits of both Hensley and Eaddy, verifying that Local Social's 2016 and 2017 tax returns had been amended as stated in Hensley's August 13 letter. (Aff. S. Scott Hensley ¶¶ 3–9, ECF No. 67.1; Aff. Lynell I. Eaddy ¶¶ 6–12, ECF No. 67.2.)

26. The parties informed the Court by e-mail on September 12, 2018 that, after Stallings's and his counsel's review of the amended returns, the parties had been unable to resolve their dispute.

27. Stallings filed a supplemental brief in opposition to the Motion on October 9, 2018. Local Social filed its supplemental reply brief in support of the Motion on October 23, 2018. (Pl. Local Social, Inc.'s Suppl. Reply Br. Supp. Mot. to Dismiss Def.'s Mot. to Enforce Mediated Settlement Agr. Under R. 12(b)(1), ECF No. 70 ["Suppl. Reply"].)

28. The Motion has now been fully briefed. The Court elects to decide the Motion without oral argument, pursuant to Rule 7.4 of the General Rules of Practice and Procedure for the North Carolina Business Court.

29. The Motion is ripe for resolution.

## II. ANALYSIS

30. "Because a moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim, mootness is properly raised through a motion under . . . Rule 12(b)(1)." *Yeager v. Yeager*, 228 N.C. App. 562, 565–566, 746 S.E.2d 427, 430 (2013) (citing *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585–86, 347 S.E.2d 25, 30 (1986); *McAdoo v. Univ. of N.C. at Chapel Hill*, 225 N.C. App. 50, 51–52, 736 S.E.2d 881, 814–15, *disc rev. denied*, 366 N.C. 581, 740 S.E.2d 465 (2013)); *see also* N.C. Gen. Stat. § 1A-1, Rule 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). A defect in subject matter jurisdiction may be raised by a party or by the court *sua sponte*. *Conner Bros. Mach. Co. v. Rogers*, 177 N.C. App. 560, 561, 629 S.E.2d 344, 345 (2006). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009); *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736 737 (1978).

31. "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison Cty. Realtors Ass'n*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996) (citation omitted); *see also In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978) (defining a case as moot when "the relief sought has been granted or [] the questions originally in controversy between the parties are no longer at issue"). Mootness "is not determined solely by examining facts in existence at the

commencement of the action." *In re Peoples*, 296 N.C. at 148, 250 S.E.2d at 912; *see also In re A.K.*, 360 N.C. 449, 452, 628 S.E.2d 753, 755 (2006). Rather, "[i]f the issues before a court . . . become moot at any time during the course of the proceedings, the usual response should be to dismiss the action." *In re Peoples*, 296 N.C. at 148, 250 S.E.2d at 912 (citations omitted).

32. Local Social argues that Stallings's Motion to Enforce and the issues the Court ordered to go to trial are moot because it has now complied with the requirements of paragraph 3(f)(iii) by (1) amending its 2016 tax returns to re-characterize a portion of the Disputed Expenses as business expenses, and (2) amending its 2017 tax return to re-characterize the remainder of the Disputed Expenses as an uncollectible debt. (*See* Reply 4, 6–7; Suppl. Reply 3–4.) Accordingly, Local Social contends, there is no longer a factual dispute for a jury to decide, nor is there anything for the Court to order Local Social to do within the scope of the relief requested in Stallings's Motion to Enforce. (*See* Br. Supp. 7; Reply 4, 6–7; Suppl. Reply 3.)

33. Stallings advances several arguments purporting to show that the Motion to Enforce is not moot. For the following reasons, the Court finds none of Stallings's arguments persuasive.

34. Stallings first argues that paragraph 3(f) requires Local Social to work with its "accounting firm[,]" which Stallings interprets to exclude Hensley and Stancil PC. (Br. Resp. 8–9.) Specifically, Stallings contends that "[r]eference to [Local Social's] accounting firm" in the paragraph 3(f) "should be read to prohibit [Local Social] from

now contending that [] Hensley and Stancil PC is its accounting firm when all evidence tends to show that [Local Social] had never engaged Stancil PC or Hensley prior to signing the [Memorandum] or even prior to two weeks before trial." (Br. Resp. 8–9.)

35. The Court is not persuaded by this argument for several reasons. First, "accounting firm" is not a defined term in either the Memorandum or the Settlement Agreement. The phrase only appears in paragraph 3(f), which includes no requirement that Local Social work with the accounting firm it engaged prior to the execution of the Memorandum. (*See* Stallings Aff. Ex. A, ¶ 3(f).) Second, the argument is belied by the fact that on June 28, 2018, Stallings also proposed that other accounts not previously engaged by Local Social be contacted to discuss amending Local Social's tax returns. (*See* Br. Resp. Ex. D, at 1.) Third, and finally, after Hensley filed the amended 2016 and 2017 tax returns, Stallings conceded that, at least with respect to the 2016 tax returns, Hensley's amendment is compliant with paragraph 3(f). (*See* Suppl. Br. Resp. 3 ("The amended [2016] tax return is compliant with the [Memorandum] to the extent it was amended to deduct a portion of the [Disputed Expenses] as deductible business expenses. . . . This is an acceptable adjustment under paragraph 3(f) . . . .").)

36. Second, Stallings argues that amending Local Social's 2017 tax return is both barred by the "mend the hold" doctrine and not contemplated by paragraph 3(f). (*See* Br. Resp. 6, 9.) However, following Hensley's amendment of the 2016 and 2017 tax returns, Stallings appears to have abandoned his argument that Local Social may

not comply with paragraph 3(f) by amending its 2017 tax returns. Stallings states that because Local Social "chose to amend the 2017 tax returns in a way that fails to deduct the remainder of the [Disputed Expenses], [Local Social] is still not in compliance with the requirements of paragraph 3(f)[.]" (Suppl. Br. Resp. 5.) Stallings's argument suggests that an amendment of Local Social's 2017 tax return in a manner he finds acceptable would provide him with the relief he seeks through his Motion to Enforce.

37. Furthermore, to the extent Stallings continues to rely on the "mend the hold" doctrine in his supplemental brief,[2] the Court concludes that the doctrine does not support his position. The "mend the hold" doctrine is "an equitable doctrine that precludes the assertion of inconsistent litigation positions, usually concerning the meaning of a contract, within the context of a single lawsuit." *Whitacre P'ship v. BioSignia, Inc.* 358 N.C.1, 24, 591 S.E.2d 870, 886 (2004) (citation omitted). "The metaphor that gives the doctrine its name derives from wrestling terminology and means 'to get a better grip (hold) on your opponent.'" *Id.* (quoting *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990)). The doctrine does not, however, preclude a change in litigation position due to newly discovered facts. *See Harbor*, 922 F.2d at 364–65; *Sager v. Standard Ins. Co.*, No. 5:08-CV-628-D, 2011 U.S. Dist.

---

[2] Stallings's supplemental brief states that he "will avoid rearguing the points made in his prior [brief in response]. This brief shall supplement the prior brief based upon [Stallings's] review of the amended tax returns which were filed by [Local Social] after [Stallings's prior] brief was filed." (Suppl. Br. Resp. 1 n.1.) Although it is not entirely clear from Stallings's briefing, the Court assumes that Stallings continues to rely on arguments made in his original response brief except to the extent the newly raised arguments in his supplemental response brief indicate that he has abandoned his previous arguments.

LEXIS 96282, at *27 (E.D.N.C. Aug. 26, 2011); *see also Kannan v. Assad*, 182 N.C. 77, 78, 108 S.E. 383, 384 (1921) ("It is well understood that, *except in proper instances*, a party to a suit should not be allowed to change his position with respect to a material matter, during the course of litigation[.]" (emphasis added) (citations omitted)).

38.     Stallings contends that Local Social's position that its 2017 tax returns may be amended to re-characterize the remaining Disputed Expenses as an uncollectible debt is "clearly inconsistent with its multiple prior positions regarding paragraph 3(f)," which were based on Aveni's advice that such a re-characterization would violate IRS regulations. (Br. Resp. 9.) However, as Local Social points out, rather than trying "to get a better hold" on Stallings in an effort to deny him the relief he seeks, Local Social "is pointing out to the referee that the match is over." (Reply 6.) Furthermore, the Court agrees with Local Social's contention that its change in position resulted from new facts—Local Social found an accountant willing and able to amend its 2016 and 2017 tax returns. (Reply 6.) As such, the doctrine does not bar Local Social from taking the position that its amendment of the 2017 tax returns, along with its amendment of its 2016 tax returns, provide Stallings with the relief he seeks. *See Harbor*, 922 F.2d at 364–65; *Sager*, 2011 U.S. Dist. LEXIS 96282, at *27; *see also Kannan*, 182 N.C. at 78, 108 S.E. at 384.

39.     Even after the amendment of the 2016 and 2017 tax returns, Stallings contends that Local Social has not complied with paragraph 3(f) "because the [D]isputed [E]xpenses . . . are not being fully deducted on the amended tax returns."

(Suppl. Br. Resp. 1.) Stallings's specific grievance is that, when Hensley amended Local Social's 2017 tax return to write off the remaining $51,043 as an uncollectible debt, rather than deduct this amount, Hensley listed the remaining $51,043 as a non-deductible capital loss on Schedule K. (Suppl. Br. Resp. 4.) Stallings repeatedly asserts that receiving a deduction in the amount of the Disputed Expenses is important to him because it "should result in a reduction of [his] taxable income from [Local Social]." (Suppl. Br. Resp. 5; *see also* Suppl. Br. Resp. 3, 4; Br. Resp. 2; Stallings Aff. ¶ 8.)

40. The importance to Stallings of receiving a deduction notwithstanding, the Court concludes that Stallings's contention that he is entitled to a deduction is beyond the scope of his Motion to Enforce and the issues the Court ordered to be tried by a jury. In essence, Stallings now asks the Court to conclude that Local Social has breached the Memorandum by not fully deducting the Disputed Expenses. However, through his Motion to Enforce, Stallings sought specific performance of the Memorandum. (Mot. to Enforce 2 (requesting that the Court "enter an order directing the parties to carry out the obligations agreed to" in the Memorandum).) Moreover, Stallings's proposed issues for trial did not ask the jury to determine whether paragraph 3(f) entitled Stallings to any deductions. (*See* Proposed Pretrial Order 6.) Any claim for breach of the Memorandum and/or Settlement Agreement is separate and distinct from the relief Stallings's seeks through his Motion to Enforce. *Cf. Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 709, 682 S.E.2d 726, 741 (2009) (affirming trial court's grant of motion to enforce settlement agreeing and dismissal

of plaintiff's action, but noting that "[t]his ruling does not . . . preclude [plaintiff] from filing a separate action regarding breach . . . of the settlement agreement"). The Court therefore concludes that such a claim should be dealt with, if at all, through a separate action for breach of contract. *See id.* Accordingly, the Court's ruling here is not determinative of any separate action for breach of the Memorandum Stallings might bring.[3]

41. In sum, the Court concludes that the Motion to Enforce and the issues remaining for trial are now moot because Local Social has performed under paragraph 3(f)(iii) by re-characterizing portions of the Disputed Expenses as business expenses on its amended 2016 tax returns and as an uncollectible debt on its amended 2017 tax returns. *See In re Peoples*, 296 N.C. at 147, 250 S.E.2d at 912. Through his Motion to Enforce and his proffered interpretation of paragraph 3(f), Stallings requested that the Court order Plaintiffs to re-characterize the Disputed Expenses in one of the three ways provided for in paragraph 3(f). Local Social, through Hensley, has now performed under paragraph 3(f)(iii). There remains nothing for a jury to decide with respect to paragraph 3(f)'s interpretation, nor is there any relief within the scope of the Motion to Enforce for the Court to order. Indeed, apart from

---

[3] Stallings also separately argues that Local Social is "in breach" of the Memorandum because Local Social's conduct since the parties' mediation "is not consistent with the requirements of 'good faith.'" (Br. Resp. 7.) Stallings bases this argument on the same conduct by Local Social on which he based his arguments, addressed above, that Local Social cannot change its position on amending its 2017 tax returns and engage Hensley to complete the amendments. (*See* Br. Resp. 7–8.) As with Stallings's contention that he is entitled to a deduction, the Court concludes that any claim for breach of paragraph 3(f)'s "good faith" term is separate and distinct from the relief sought in Stallings's Motion to Enforce. Any such claim should therefore be dealt with, if at all, through a separate action. The Court, however, expresses no view on whether any such claim would be meritorious.

Stallings's contention that Local Social must deduct the Disputed Expenses on its amended tax returns, he does not explain what remains for the Court to order Local Social to do.

42. Accordingly, the Court determines that the Motion should be granted. As a result, the parties are returned to their status prior to the filing of the Motion to Enforce and the Court concludes that there are no issues presently existing which would require a trial. Subject to further disputes regarding compliance with the terms of the settlement reached by and between the parties, the Court expects the parties to complete the tasks necessary for completion of the settlement and file mutual dismissals as contemplated by the parties' settlement. This ruling is without prejudice to Stallings's ability to file a separate action regarding Local's Social's purported breach of the Memorandum and/or Settlement Agreement.

### III. CONCLUSION

43. For the foregoing reasons, the Motion is **GRANTED**.

**SO ORDERED**, this the 30th day of January, 2019.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
   for Complex Business Cases